**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **LORI A. LATHAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 1:24-CV-000213-KD-C** |
| | ) | |
| **BRETT/ROBINSON GULF** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This action is before the Court on the Motion for Summary Judgment filed by Defendant Brett/Robinson Gulf Corporation ("Brett/Robinson"). (Doc. 58). Brett/Robinson argues that it is entitled to summary judgment on Plaintiff Lori A. Latham's ("Latham") remaining claim under the Family and Medical Leave Act ("FMLA"). Upon consideration, and for the reasons below, the motion is **CARRIED to TRIAL**.

### I.    Findings of Fact[1]

In May 2021, Latham was hired as a housekeeper for Brett/Robinson, which manages and operates high-rise condominiums in Orange Beach and Gulf Shores, Alabama. (Doc. 57 at 2, 8). Latham started working for Brett/Robinson on June 1, 2021. (Id. at 2, 8). Latham, like other housekeepers at Brett/Robinson, was not a straight hourly employee. (Id. at 28). Instead, Latham was compensated on a piece-rate basis, with her regular compensation determined by reference to the rooms or units cleaned rather than by a fixed hourly wage for each non-overtime hour worked. (Id.). Put another way, Latham was compensated based on the number of rooms she cleaned (for

---

[1] The "facts," as accepted at the summary judgment stage, "may not be the actual facts of the case." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013).

1

non-overtime work), and Latham was compensated on an hourly basis for any overtime work. (Doc. 64-1 at 2–3). Latham's last day of work was July 31, 2021. (Doc. 57 at 2, 8). In the last six months of her employment, Latham was absent for work on numerous occasions, had multiple instances of tardiness, and received counseling for her attendance issues on multiple occasions. (Id. at 3).

On August 1, 2021, Latham called in sick. (Doc. 57 at 2). On August 2, 2021, Brett/Robinson was notified that Latham had been admitted to the hospital on August 1, 2021. (Id. at 2). Between August 3 and August 6, 2021, Latham did not appear for work at her assigned shifts and did not contact Brett/Robinson regarding her absence. (Id.). On August 6, 2021, Brett/Robinson's Office Manager, Jassiel Merchant ("Merchant"), contacted Latham's mother. (Id. at 29, 36). Latham's mother informed Merchant that Latham was in the hospital with a urinary tract infection, that Latham underwent a surgery on August 5, that Latham tested positive for COVID-19, and that Latham would require approximately four to six weeks to recover. (Id. at 29, 36). Merchant relayed the substance of the call to Brett/Robinson's Room Operations Lead, Irma Wiley ("Wiley"). (Id. at 29). Neither Latham nor her mother made any request to Brett/Robinson for leave under the FMLA. (Id. at 25, 26).

Merchant and Wiley took steps to investigate whether Latham could qualify for FMLA leave. (Doc. 57 at 29). On August 6, 2021, Merchant emailed Brett/Robinson's Human Resources Director, Cheryl Eubanks ("Eubanks"), and asked Eubanks to check whether Latham qualified for FMLA leave. (Id. at 30, 34). Wiley was copied on the email. (Id. at 33). The email identified Latham by name and employee number and stated that Latham's date of hire was June 1, 2020. (Id. at 34). Eleven minutes after the email was sent, Eubanks forwarded the email to

Brett/Robinson's Human Resources Assistant, Cassandra White ("White"), and asked White to "check to see if [Latham] has requisite hours to qualify for FMLA." (Id. at 41).

White was familiar with the FMLA requirement that, to be eligible for FMLA leave, an employee must have worked as least 1,250 hours of service during the twelve months preceding the commencement of the requested leave. (Doc. 57 at 37). White reviewed the information available to her through Brett/Robinson's records concerning Latham's employment, payroll, and work history to determine whether Latham worked at least 1,250 hours during the relevant twelve-month period. (Id. at 38). White does not disclose the specific documents she reviewed. Based on her review, White did not believe that Latham worked at least 1,250 hours during the twelve months preceding the start of the leave being evaluated. (Id.).

White does not explain how she reached this conclusion but rather states that determining the number of hours Latham worked for purposes of FMLA eligibility "was less straightforward." (Doc. 57 at 37). White sought a second-level review from Eubanks to confirm the accuracy of her determination that Latham had not worked at least 1,250 hours during the preceding twelve months. (Id.). White emailed Eubanks: "I do not think [Latham] meets the requirements. I would like for us to review it together to be sure." (Id. at 40). White considered Eubanks to be knowledgeable regarding human resources matters, including FMLA leave-related issues, because Eubanks was Brett/Robinson's Human Resources Director and a licensed Alabama attorney. (Id. at 38).

The following business day, on August 9, 2021, Eubanks responded to White's email stating: "[Latham] doesn't meet the hourly requirement (1250 hours during the 12 months prior to the start of the leave requested) as of this date." (Doc. 57 at 38, 40). There is no explanation as to how this determination was made by Eubanks. Shortly after, Eubanks replied: "I was thinking the

same." (Id. at 38, 40). Eubanks then emailed Merchant, copying White, and stated: "As of this date, Ms. Latham has not satisfied the requirement that she must have worked 1250 hours during the 12 months prior to the start of FMLA. To date, Ms. Latham has only worked 1,045.43 hours during the last 12 months." (Id. at 38, 43). The 1,045.43-hour figure in Eubanks' August 9, 2021, email was consistent with White's understanding that Latham had not satisfied the FMLA's 1,250 hour-requirement. (Id. at 39).

Merchant informed Wiley of Eubanks's determination that Latham was not eligible for FMLA leave because she had not worked 1,250 hours in the prior twelve months. (Doc. 57 at 30). Merchant and Wiley relied on Eubanks's determination as the basis for not extending FMLA leave to Latham. (Id.).

"Pursuant to Brett/Robinson's Employee Handbook, unexcused absences and excessive excused absences are cause for corrective action and may result in termination." (Doc. 57 at 3). "Due to Latham's excessive absences (both those prior to August 12, 2021, and those Wiley understood to be forthcoming because of Latham's inability to return to work for four to six weeks as a result of her surgery), [Wiley] determined it was necessary to discharge Latham pursuant to Brett/Robinson's attendance policy." (Id.). On August 12, 2021, Wiley and Latham called Merchant. (Id.). Wiley informed Latham that Brett/Robinson would need to terminate her position in the company's personnel computer system, but that she could reapply in the future. (Doc. 57 at 3, 36).[2]

On June 27, 2024, Latham filed a complaint, pro se, alleging claims under the ADA and the FMLA. (Doc. 1). On August 1, 2024, Latham, by and through her counsel, filed an amended

---

[2] The parties dispute whether Latham voluntarily resigned during this call, but this fact is not material to the issue in this case—whether Brett/Robinson willfully violated Latham's FMLA rights by denying her FMLA leave.

complaint restating these claims with additional facts and particularity. (Doc. 6). Latham alleged disability discrimination in violation of the ADA (Count One), denial of a reasonable accommodation under the ADA (Count Two), and interference with Latham's alleged rights under the FMLA (Count Three). Brett/Robinson moved to dismiss the amended complaint. (Doc. 10).

The United States Magistrate Judge recommended that all claims in the amended complaint be dismissed with prejudice. (Doc. 24 at 23). After a proper review, and a *de novo* determination of the portions of the recommendation to which objection was made, the recommendation was partially adopted. (Doc. 27). The Court granted the motion to dismiss as to Counts One and Two, but the Court declined the adopt the recommendation to dismiss Count Three as to the issue of whether Brett/Robinson willfully violated Latham's FMLA rights. The Court explained that the timing of the events alleged "may not alone be sufficient to withstand summary judgment," but the allegations made "the claim of willfulness 'plausible on its face.'" (Id. at 1).

## II.    Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome" of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine dispute of material fact exists. Id.

The party moving for summary judgment "bears the initial burden of demonstrating the absence of a genuine dispute of material fact." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011). The movant meets this burden by identifying affirmative evidence (pleadings, depositions, answers to interrogatories, admissions on file, etc.) to support its claim that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

Fed. R. Civ. P. 56(c)(1)(A). If the nonmovant bears the burden of persuasion at trial, the movant may also make a prima facie showing of summary judgment by demonstrating that the nonmovant's evidence is insufficient to establish an essential element of its claim. Grange Mut. Cas. Co. v. Slaughter, 958 F.3d 1050, 1057 (11th Cir. 2020); Fed. R. Civ. P. 56(c)(1)(B).

If the movant meets its burden under Rule 56(c), summary judgment will be granted unless the nonmovant offers some competent evidence that could be presented at trial showing that there is a genuine dispute of material fact. Celotex, 477 U.S. at 324. If the movant met its burden by pointing "to specific portions of the record . . . to demonstrate that the nonmoving party cannot meet its burden of proof at trial," the nonmovant must "go beyond the pleadings" to designate specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(e).

When assessing a summary judgment motion, the court's function is not to make "credibility determinations" and "weigh the evidence." Anderson, 477 U.S. at 248. Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." FindWhat, 658 F.3d at 1307. Thus, summary judgment is only proper when a movant shows that no reasonable jury could find for the nonmovant—even when the evidence and inferences are drawn in the nonmovant's favor.

III.    Analysis

Latham's only remaining claim is that Brett/Robinson interfered with her rights under the FMLA when it failed to provide her a leave of absence following her hospitalization. (Doc. 6 at 6). Brett/Robinson argues that it is entitled to summary judgment on this claim because "Latham did not file this action within the FMLA's standard two-year statute of limitations, and there is no evidence from which a reasonable juror could find Brett/Robinson willfully violated her rights

6

under the FMLA to support application of a three-year statute of limitations." (Doc. 58 at 12). The Court addresses these arguments in turn.

###### A. Whether Latham must establish Brett/Robinson's willful violation of the FMLA.

Brett/Robinson begins by outlining the "general rule" that "claims brought under the FMLA are subject to a two-year statute of limitations." (Doc. 58 at 13). (citing 29 U.S.C. § 2617(c)(1); Chaney v. Mobile Cnty., No. CV 21-0220-CG-M, 2021 WL 4999376, at *2 (S.D. Ala. Oct. 26, 2021)). Brett/Robinson explains that the "limitations period is extended to three years only if the plaintiff establishes that the employer's violation was willful" and that the "limitation period runs from the date of the employer's last alleged FMLA violation." (Id.) (citing Chaney, 2021 WL 4999376 at *2).

Brett/Robinson then recites the "willful" standard: "Although the Eleventh Circuit has not expressly defined what constitutes a willful violation of the FMLA, courts within this Circuit have applied the standard articulated by the Supreme Court in McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988)." (Id.) (citing Chaney, 2021 WL 4999376 at *2). "Under that standard, a violation is willful only if the employer 'knew or showed reckless disregard' for whether its conduct was prohibited by the FMLA." (Id.) (quoting Chaney, 2021 WL 4999376 at *2). Brett/Robinson frames the standard as "demanding" and "not easily met." (Id.). In support, Brett/Robinson quotes caselaw explaining that "even if some intent to avoid the FMLA's consequences is evidenced—a finding of willfulness will not necessarily follow where the employer tried to comport with the law and tenable reasoning undergirded its conduct." Copeland v. MARTA, No. 1:08-cv-1300-WSD-ECS, 2010 U.S. Dist. LEXIS 149401, at *19-20 (N.D. Ga. Oct. 8, 2010) (quoting Bass v. Potter, 522 F.3d 1098, 1104 (10th Cir. 2008)).

7

Brett/Robinson argues that the willful standard applies because Latham filed her complaint "well after the two-year statute of limitations expired." (Doc. 58 at 13). Latham's response does not argue against the application of the willful standard. (Doc. 62). Moreover, the United States Magistrate Judge's recommendation explained that the willful standard applies because Latham's complaint was filed "well after the two-year statute of limitations expired." (Doc. 24 at 20). Therefore, Latham must establish that Brett/Robinson's denial of her FMLA leave was a willful violation of her FMLA rights.

**B. Whether Brett/Robinson's denial of Latham's FMLA leave was a willful violation of her FMLA rights.**

Brett/Robinson argues that no reasonable juror could find that Brett/Robinson willfully violated Latham's FMLA rights for two reasons. (Doc. 58 at 14–20). *First*, Latham conclusively admitted that Brett/Robinson did not willfully violate her FMLA rights. *Second*, the undisputed record facts show that Brett/Robinson investigated Latham's FMLA leave eligibility and determined in good faith that she was ineligible.

**1. The Court will allow withdrawal or amendment of Latham's Rule 36 admissions.**

The first issue is whether Latham's previous Rule 36 admissions conclusively establish that Brett/Robinson did not willfully violate Latham's FMLA rights. "[R]equests for admissions are automatically deemed admitted if not answered within 30 days, and that the matters therein are 'conclusively established' unless the court on motion permits withdrawal or amendment of the admissions." United States v. 2204 Barbara Lane, 960 F.2d 126, 129 (11th Cir. 1992) (quoting Rainbolt v. Johnson, 669 F.2d 767, 768 (D.C. Cir. 1981)). Here, Latham failed to respond to Brett/Robinson's request for admission that stated:

> 29 U.S.C. § 2617(c)(1) provides that, "[e]xcept as provided in paragraph (2), an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." Admit that, under the

allegations of Count Three of your Amended Complaint [Doc. 6], August 12, 2021 was the date of the "last event constituting the alleged violation for which the action is brought" within the meaning of § 2617(c)(1).

(Doc. 57 at 47). Therefore, this matter is conclusively established unless the Court on motion permits withdrawal or amendment of the admission.

To cure this issue, Latham moves for the withdrawal or amendment of her Rule 36 admissions. (Doc. 63 at 4). Under Rule 36(b), a "court may allow a party to withdraw or amend an admission when doing so: (1) would promote the presentation of the merits; and (2) would not prejudice the requesting party in maintaining or defending the action on the merits." 1 Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary § 36:26 (2026). The first prong "'emphasizes the importance of having the action resolved on the merits," . . . and is 'satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case.'" Perez v. Miami-Dade Cnty., 297 F.3d 1255, 1266 (11th Cir. 2002) (citations omitted). The second prong requires the court to ascertain potential prejudice to the non-moving party. Id. "The prejudice contemplated by Rule 36(b) is not that the party opposing the motion will now have to present proof on the matter in question, but whether it will be hindered in its ability to present that proof now because it thought the matter uncontested." Gensler, supra at § 36:28. For example, a defendant is not prejudiced by a withdrawal if he "knew from the very beginning—and continued to be made aware—that he would have to prove many of the elements of his case now deemed admitted." Perez, 297 F.3d at 1267–68.

Latham argues that withdrawal of the deemed admissions would promote the presentation of the merits because the "deemed admission that Brett/Robinson 'did not willfully violate' the FMLA is the sole basis for [Brett/Robinson's] statute of limitations defense." (Doc. 63 at 4). And

9

Latham argues that Brett/Robinson cannot show the required prejudice because it "has all the evidence it needs to defend this case on the merits." (Id. at 6).

Upon consideration, Latham meets the requirements for the withdrawal or amendment of her Rule 36 admissions. To start, allowing the withdrawal would promote the presentation of the merits. Brett/Robinson seeks to use Latham's denial as conclusive proof that it did not willfully violate Latham's FMLA rights. In other words, "upholding the admissions would practically eliminate any presentation of the merits of the case." Perez, 297 F.3d at 1266. Further, the proposed withdrawal does not appear to prejudice Brett/Robinson in defending the action on the merits. Brett/Robinson knows that it must prove that it did not willfully violate Latham's FMLA rights, and Brett/Robinson did not rely solely on the Rule 36 admission in its motion for summary judgment. Even more, Brett/Robinson offers no argument in response to Latham's motion. Therefore, Latham's motion to withdraw or amend her Rule 36 admissions is **GRANTED**, and Latham's previous admissions do not conclusively establish that Brett/Robinson did not willfully violate her FMLA rights.

### 2. Whether a reasonable jury could find that Brett/Robinson willfully violated Latham's FMLA rights by denying her leave is carried to trial.

The ultimate issue is whether a reasonable jury could find that Brett/Robinson willfully violated Latham's FMLA rights by denying her FMLA leave. Brett/Robinson argues that "the undisputed record facts foreclose any argument of willfulness." (Doc. 58 at 14). *First*, Brett/Robinson addresses Latham's position that she was "overqualified" for FMLA leave based on her reading of her final paystub. (Id. at 15). Brett/Robinson argues that Latham's "premise fails at the outset" because "it rests on a demonstrably and indisputably incorrect interpretation of her pay records." (Id.). On this point, Brett/Robinson attempts to refute Latham's contention that her "earned vacation pay" shows that she worked over 3,300 hours in the relevant period. (Id. at 18).

10

*Second*, Brett/Robinson argues that "[m]ore importantly, even if Latham's argument were accepted at face value, it would not establish willfulness as a matter of law." (Id. at 15). In support, Brett/Robinson explains that "the Supreme Court has made clear that willfulness cannot 'be based on nothing more than negligence, or, perhaps, on a completely good-faith but incorrect assumption' that the law was followed." (Id.) (quoting McLaughlin, 486 U.S. at 135).

Brett/Robinson also cites an unpublished Eleventh Circuit opinion. See Smith v. St. Joseph's/Candler Health Sys., Inc., 770 F. App'x 523 (11th Cir. 2019). In Smith, the Eleventh Circuit reviewed the district court's grant of summary judgment in favor of the defendant–employer on the plaintiff's FMLA claim. Id. at 527. The district court determined that the plaintiff's "unsupported allegation" that the defendant "miscalculated her FMLA leave did not show that the [defendant] willfully violated her rights." Id. at 525. Thus, the district court applied the two-year statute of limitations and held that the plaintiff's complaint was untimely. Id. The Eleventh Circuit affirmed the ruling and explained that the plaintiff did not identify "evidence raising a genuine issue of material fact about whether [the defendant's] conduct was willful." Id. The Eleventh Circuit reasoned that the plaintiff offered "no evidence" for her allegation "that the hospital intentionally miscalculated or misled her about her available FMLA hours." Id. at 527. The Eleventh Circuit concluded that "[e]ven construing the facts in Smith's favor, as we must, we do not see record evidence showing that [the defendant] knew or showed reckless disregard as to whether its conduct violated the FMLA." Id. Brett/Robinson draws the following comparison:

> Like in Smith, even accepting Latham's theory that she was qualified for FMLA leave at face value, there is no record evidence from which a juror could possibly conclude that Brett/Robinson knew (or showed reckless disregard as to whether) its determination that Latham was not qualified for FMLA was in error.

(Doc. 58 at 16).

11

Brett/Robinson then summarizes the process behind its decision that Latham was not qualified for FMLA leave. "Merchant contacted Eubanks to determine whether Latham qualified for FMLA leave." (Id.). "Eubanks immediately directed Human Resources Assistant Cassandra White to review Latham's hours." (Id.). White explained that "she did not believe Latham satisfied the 1,250-hour requirement but recommended that she and Eubanks 'review it together to be sure.'" (Id.). "Eubanks independently agreed and determined that Latham had worked only 1,045.43 hours in the preceding twelve months and therefore did not meet the FMLA's eligibility requirements." (Id.). According to Brett/Robinson, this "sequence demonstrates a clear, good faith effort to investigate, verify, and comply with the FMLA's requirements—not an effort to willfully violate them." (Id.).

Latham's response argues that Brett/Robinson's calculation is "false and cherry-picked" because "Eubanks relied on a document showing 1,045.43 hours for 2021 while completely ignoring the 1,318.53 hours [Latham] worked in 2020." (Doc. 62 at 19). In support, Latham attaches copies of her 2020 and 2021 pay summaries, which list the "Hours" for "Piece Rate Calc" as 1,026.61 and 1,045.43, respectively. (Docs. 62-4, 62-5). These pay summaries also list the "Hours" for "Piece Worker OT" as 124.42 and 71.85, respectively. (Docs. 62-4, 62-5). Latham explains that the "FMLA look-back period (Aug. 2020 – Aug. 2021) covers both years." (Doc. 62 at 19). Latham argues that the following evidence shows that Brett/Robinson willfully violated her FMLA rights: (1) terminating Latham six days after receiving notice of surgical leave; (2) offering shifting explanations for separation; (3) relying on cherry-picked hour calculations; (4) submitting false information to ADOL; (5) penalizing Latham for emergency hospital absences under an attendance policy; (6) failing to provide mandatory FMLA notices; and (7) recasting a documented termination as a voluntary resignation. (Doc. 62 at 20).

12

Brett/Robinson's reply addresses each of the seven assertions of evidence provided in Latham's response. (Doc. 64). Brett/Robinson argues that none of the assertions address the dispositive question presented by Brett/Robinson's motion: "whether Brett/Robinson *knew* that its determination of Latham's FMLA eligibility was wrong or *recklessly disregarded* the possibility that it was wrong." (Id. at 3).

The Court agrees that most of Latham's assertions are not relevant to the issue of whether Brett/Robinson willfully violated Latham's FMLA rights by denying her leave. However, Latham has provided copies of her payroll summaries listing her "Hours" for "Piece Rate Calc" as 1,026.61 in 2020 and 1,045.43 in 2021. (Docs. 62-4, 62-5). Latham argues, and it appears to be correct, that the FMLA leave calculation should have included the 1,045.43 hours from 2021 and five months of hours from 2020. See 29 C.F.R. § 825.110(a)(2) ("An eligible employee is an employee of a covered employer who: . . . [h]as been employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave."). Therefore, the payroll summaries are relevant to the issue of whether Brett/Robinson's FMLA-eligibility determination was a willful violation.

The payroll summaries show that Brett/Robinson's FMLA-eligibility determination may have been wrong. Brett/Robinson does not explain why it determined that "Latham only worked 1,045.43 hours during the last 12 months," even though Latham's payroll summaries listed her "Hours" for "Piece Rate Calc" as 1,026.61 in 2020 and 1,045.43 in 2021. (Doc. 57 at 38, 43; Docs. 62-4, 62-5). Notably, White and Eubanks credited Latham with 1,045.43 hours in the relevant period, which is the *exact* number of hours listed in the 2021 payroll summary. Brett/Robinson's motion for summary judgment provides an extensive discussion on why Latham's understanding of her "earned vacation pay" is flawed. (Doc. 58 at 19). But Latham's response directly raises the

13

argument that Brett/Robinson did not consider the hours listed in her 2020 payroll summary. And Brett/Robinson offers no explanation for this apparent discrepancy.

Of course, Latham's burden at trial is more than just showing that Brett/Robinson's calculation was wrong. Latham must show that White and Eubanks knew their calculation "was wrong or recklessly disregarded the possibility that it was wrong." (Doc. 64 at 7). Brett/Robinson repeatedly emphasizes this standard. Brett/Robinson contends that Latham's understanding rests on speculation. And Brett/Robinson argues its "multilevel review process" between White and Eubanks shows "an intention to comply with the FMLA, not evidence of deliberate wrongdoing." (Doc. 64 at 10).

The Court recognizes that the willful-violation standard is high. At the summary judgment stage, however, Brett/Robinson bears the burden of showing that no reasonable jury could find in favor of Latham on this issue. The Court must view the evidence and "all reasonable inferences" in the light most favorable to Latham. FindWhat, 658 F.3d at 1307; see also Harkleroad v. Wayne Mem'l Hosp., 619 F. Supp. 3d 1272, 1276 (S.D. Ga. 2022) (explaining that the defendants' argument that "they could not have known or recklessly disregarded whether their conduct violated the FMLA . . . fail[ed] to view the facts in the light most favorable" to the plaintiff).

Without any explanation of how White and Eubanks reached their conclusion, or any explanation of whether it was a mistake and how it was made, a jury could determine that it was willful. Stated another way, if White and Eubanks persist in failing to explain their determination or admit a mistake and explain how it happened, it *perhaps* would not be unreasonable for a jury to find that their review and determination was made recklessly. Therefore, the motion for summary judgment is **CARRIED to TRIAL**.

14

## IV.    Conclusion

Brett/Robinson moves for summary judgment on the remaining FMLA claim. The motion is **CARRIED to TRIAL**.

**DONE** and **ORDERED** this the **6th** day of **August 2026**.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**